IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION / | No. M 07-1827 SI<br>MDL No. 1827 |
| This Order Relates To:<br><br>AT&T MOBILITY, LLC, *et al.*, v. AU OPTRONICS CORP., *et al.*, C 09-4997 SI<br><br>TARGET CORP., *et al.*, v. AU OPTRONICS CORP., *et al.*, C 10-4945 SI<br><br>Defendants. / | **ORDER GRANTING DEFENDANTS' JOINT MOTION FOR PARTIAL SUMMARY JUDGMENT ON CHOICE-OF-LAW GROUNDS** |

On August 24, 2012, the Court held a hearing on defendants' joint motion for partial summary judgment with respect to certain indirect purchaser claims of plaintiffs AT&T Mobility, RadioShack, and Old Comp., Inc. ("CompUSA"). For the reasons set forth below, the Court GRANTS defendants' motion. Docket Nos. 6082 & 6083 in Master Docket 07-1827 SI; Docket Nos. 281 & 282 in C 09-4997 SI; Docket Nos. 236 & 237 in C 10-4945 SI.

**BACKGROUND**

AT&T Mobility is headquartered in Georgia. Defendants have submitted undisputed evidence that the AT&T Mobility officials involved in contracting for and purchasing handsets, including negotiating with mobile phone suppliers, selecting mobile phones for purchase, and issuing purchase orders for handsets, were located primarily in Georgia. Some of these activities also occurred in

Washington and Texas.[1] None of these activities took place in Tennessee. *See generally* Exhibits attached to Cohen Decl. & Reply Cohen Decl.

RadioShack is headquartered in Texas. Defendants have submitted undisputed evidence that all RadioShack employees involved in contracting with LCD product suppliers, selecting LCD products, issuing purchase orders, and paying invoices were based in Texas. None of these activities took place in California. *See generally* Lutz Decl., Ex. N-Q & Reply Lutz Decl., Ex. A.

CompUSA was headquartered in Texas during the relevant time period. Defendants have submitted undisputed evidence that CompUSA's merchandising employees were based in Texas, that the vast majority of contract negotiations took place in Texas, LCD product types and quantities were selected in Texas, and invoices were paid in Texas. None of these activities took place in California or Illinois.[2] *See generally* Lutz Decl., Ex. N, R-T & Reply Lutz Decl., Ex. B.

## LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to

---

[1] Payments issued from Texas and Florida; AT&T Mobility has not alleged that Texas or Florida law applies to its claims.

[2] Defendants have also submitted evidence showing that all CompUSA purchase orders were issued by the merchandising division, which was in Texas. *See* CompUSA 30(b)(6) deposition (Virginia Hodges) at 38:24-39:5 ("Q: Was the merchandising division also responsible for issuing purchase orders for LCD products? A: Yes, sir."), 164:4-6 ("Q: The purchase orders all come from – the merchandising division were all located in Texas? A: Yes.") (Lutz Decl., Ex. R); *see also* Target SAC ¶ 29 ("In addition, CompUSA issued all of its purchase orders for LCD products from Texas and received invoices for those orders in Texas."). In opposition to defendants' motion, CompUSA submitted the declaration of Todd Whitbeck, an Executive Consultant for OldComp, Inc., "which is the vehicle used for winding down CompUSA, Inc.'s business." Whitbeck Decl. ¶ 1. Mr. Whitbeck states that during the time period of 2003-2006, "[p]urchase orders were prepared and issued in Alameda, California for the products that were processed at the Hayward Distribution Center." *Id*. ¶ 4.

Defendants state that CompUSA did not previously disclose Mr. Whitbeck as a witness. In any event, it is well settled that a party cannot "contradict their earlier allegations in an effort to survive summary judgment." *Cline v. Industrial Maintenance Engineering & Contracting Co.*, 200 F.3d 1223, 1232 (9th Cir. 2000). Accordingly, because Mr. Whitbeck's declaration contradicts both CompUSA's own allegations in the SAC as well as the testimony of its Rule 30(b)(6) designee, the Court disregards Mr. Whitbeck's statement about the issuance of purchase orders from California.

negate or disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. *See id.* at 325.

The burden then shifts to the non-moving party to "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the evidence is viewed in the light most favorable to the non-moving party, and all justifiable inferences are to be drawn in its favor. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge [when she] is ruling on a motion for summary judgment." *Id.* Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir.1979); *see also Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (observing that there is no genuine issue of fact "where the only evidence presented is 'uncorroborated and self-serving' testimony" (quoting *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996))). The evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(c). Hearsay statements found in affidavits are inadmissible. *Fong v. Am. Airlines, Inc.*, 626 F.2d 759, 762-63 (9th Cir. 1980).

**DISCUSSION**

Defendants move for summary judgment on the following claims: (1) AT&T Mobility's indirect purchaser claims brought under Tennessee law; (2) RadioShack's indirect purchaser claims brought under California law; and (3) CompUSA's indirect purchaser claims brought under California and

3

Illinois law.[3] Defendants argue that discovery shows that the plaintiffs did not purchase products containing LCD panels in Tennessee (AT&T Mobility), California (RadioShack and CompUSA), and Illinois (CompUSA), but only received products in those states before reshipping them across the country. Defendants contend that the relevant purchasing activity occurred in Georgia for AT&T Mobility and Texas for RadioShack and CompUSA, and thus as a matter of Due Process that plaintiffs may not bring indirect purchaser claims under Tennessee, California or Illinois law. As a separate and independent basis for summary judgment, defendants bring a choice-of-law challenge to plaintiffs' state-law claims, arguing that Georgia (AT&T Mobility) and Texas (RadioShack and CompUSA) law governs those claims.

Before a court may apply a particular state's law to a cause of action, it must ensure that application of that law would comport with the Due Process Clause of the United States Constitution. In undertaking this inquiry, the Court must examine "the contacts of the State, whose law [is to be] applied, with the parties and with the occurrence or transaction giving rise to the litigation." *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 308 (1981). Only if the state has a "significant contact or significant aggregation of contacts, creating state interests, with the parties and the occurrence or transaction" may the law of that state be applied. *Id.*; *see also Phillips Petroleum v. Shutts*, 472 U.S. 797, 821-22 (1985) (Due Process requires a "significant contact or significant aggregation of contacts" between the plaintiff's claims and the state at issue).

This Court has consistently held that, for purposes of state law indirect purchaser claims, plaintiffs are deemed to be injured in the states where they agreed to pay inflated prices for products, not the states where they merely received products. The Court has held (1) as a matter of due process, "in order to invoke the various state laws at issue, [plaintiff] must be able to allege that the occurrence or transaction giving rise to the litigation – which is [plaintiff's] purchase of allegedly price-fixed goods – occurred in the various states," and the state where a plaintiff's "injury – its overpayment for LCD

---

[3] Defendants' motion also addressed the application of Massachusetts and Mississippi law to RadioShack's claims, but RadioShack's opposition states that it is not pursuing damages claims under those state's laws. Opp'n at 5 n.16. Similarly, defendants' motion addressed the applicability of Washington law to AT&T Mobility's claims (based on the purchasing activity of the former AT&T Wireless), but in the opposition AT&T Mobility has abandoned claims based on that entity's purchases. Opp'n at 2 n.6, 23.

4

products – occurred in . . . the state in which [plaintiff] paid its invoices," *In re TFT-LCD (Flat Panel) Antitrust Litig. (Costco I)*, Nos. MDL 07-1827 SI, C 11-58 SI, 2011 WL 3809767, at *2, *4 (N.D. Cal. Aug. 29, 2011); (2) as a matter of due process, "[plaintiff] may not bring claims under the laws of the states where it has alleged only that it has received goods," *id*. at *3; and (3) applying choice-of-law principles, the state where a plaintiff paid the invoices, negotiated purchases, and is headquartered "has stronger connections with and interests in plaintiffs' claims than states from which plaintiff merely issued purchase orders or received product shipments and in which defendants have a presence." *Id* at *4-5.

Plaintiffs argue that their purchases of LCD products were completed at their respective distribution centers, which are located in Tennessee (AT&T Mobility), California (RadioShack and CompUSA), and Illinois (CompUSA).[4] Plaintiffs argue that they only agreed to pay the supracompetitive prices for price-fixed products after they took title at their distribution centers, and that plaintiffs' receipt of products in Tennessee, California and Illinois constitutes a "purchase" of those products in those states pursuant to the Uniform Commercial Code ("UCC"). RadioShack and CompUSA also argue that the application California law to their claims is supported by the evidence of defendants' contacts and anti-competitive conduct in California.

The Court has previously rejected plaintiffs' arguments that a plaintiff's antitrust injury occurs in the state where it receives products. The Court has also rejected the related argument that a plaintiff's injury occurred in the state where they "took title" of LCD products.[5] In *Costco II*, Costco argued, as plaintiffs do here, that its injury occurred in California where it received shipments because it did not purchase the LCD products until title passed to Costco, and that Costco's standard terms provided that

---

[4] Plaintiffs also assert, citing *In re TFT-LCD (Flat Panel) Antitrust Litig.*, Nos. MDL 07-1827 SI, C 09-4997 SI, 2010 WL 4705518, at *2-3 (N.D. Cal. Nov. 12, 2010), that "[t]his Court has already held in the AT&T case that AT&T's allegations that it purchased handsets in Tennessee were, as a matter of law, sufficient to allow application of Tennessee's antitrust laws, consistent with Due Process." Opp'n at 14:6-8. However, as defendants note, defendants did not move to dismiss AT&T Mobility's claims under Tennessee law because AT&T Mobility alleged that it made "purchases" in Tennessee.

[5] Consistent with these rulings, the Court has also held that "it is the location of the purchase, not the ultimate destination of the LCD products, that determines where the injury occurred" for purposes of determining whether a plaintiff's purchases fall within the domestic injury exception to the FTAIA. Docket No. 4831 at 5:18-19.

5

1 title passed to Costco only after Costco received and accepted merchandise at its distribution center in
2 California. *See* Docket No. 64 at 6-7 in C 11-58 SI (Costco's Response to Defendants' Joint Motion
3 to Dismiss Amended Complaint). Costco also relied on the UCC's definition of "purchase" to support
4 its argument that California law applied to its claims. *Id*. The Court rejected those arguments and held
5 "Costco's purchasing process was controlled from Washington and that Costco was injured in
6 Washington." *In re TFT-LCD (Flat Panel) Antitrust Litig. (Costco II)*, Nos. MDL 07-1827 SI, C 11-58
7 SI, 2011 WL 5922966, at \*2 (N.D. Cal. Nov. 28, 2011). The Court noted that Costco was headquartered
8 in Washington, and LCD products "were selected in Washington, the negotiation over the terms of
9 purchase took place in Washington, the invoices were sent to Washington, and payment issued from
10 Costco's Washington headquarters." *Id*.

11 The Court's reasoning in *Costco II* applies here, and warrants summary judgment in favor of
12 defendants. The undisputed evidence shows that AT&T Mobility agreed to pay allegedly inflated prices
13 in Georgia, not Tennessee. AT&T Mobility executed purchase agreements in Georgia, negotiated
14 purchases in Georgia, and issued purchase orders in Georgia. None of these activities occurred in
15 Tennessee, and Tennessee's only connection to AT&T Mobility's claims is that mobile phones were
16 received at the Memphis distribution center and then redistributed to retail stores throughout the
17 country. Similarly, RadioShack and CompUSA agreed to pay allegedly inflated prices in Texas, nor
18 California or Illinois. The undisputed evidence shows that RadioShack and CompUSA executed
19 purchase agreements in Texas, negotiated purchases in Texas, issued purchase orders in Texas, and
20 payment issued from Texas. Again, none of these activities occurred in California or Illinois, and
21 RadioShack and CompUSA only received products in those states before shipping them to stores across
22 the country.[6]

23 Accordingly, the Court GRANTS defendants' motion for partial summary judgment on (1)
24 AT&T Mobility's indirect purchaser claims brought under Tennessee law; (2) RadioShack's indirect

---

[6] In addition, the Court has repeatedly rejected the argument that a plaintiff may invoke California law based on defendants' alleged California contacts as these contacts "do not provide a link between plaintiffs' claims that they purchased price-fixed products and California." *In re TFT-LCD (Flat Panel) Antitrust Litig.*, Nos. MDL 07-1827 SI, C 09-4997 SI, 2010 WL 2609434, at \*3 (N.D. Cal. June 28, 2010). AT&T's interlocutory appeal of this Court's order dismissing its California claims is currently pending in the Ninth Circuit.

1 purchaser claims brought under California law; and (3) CompUSA's indirect purchaser claims brought
2 under California and Illinois law. The Court finds it unnecessary to address the alternative basis (choice
3 of law) for defendants' motion for summary judgment.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS defendants' motion. Docket Nos. 6082 & 6083 in Master Docket 07-1827 SI; Docket Nos. 281 & 282 in C 09-4997 SI; Docket Nos. 236 & 237 in C 10-4945 SI.

**IT IS SO ORDERED.**

Dated: August 27, 2012

SUSAN ILLSTON
United States District Judge