IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION / | No. M 07-1827 SI<br>MDL. No. 1827 |
| This Order Relates to:<br><br>*AT&T Mobility LLC v. AU Optronics Corp., et al.,* C 09-4997 SI<br><br>*Best Buy Co., Inc. v. AU Optronics Corp., et al.,* C 10-4572 SI<br><br>*Electrograph Systems, Inc. v. Epson Imaging Devices Corp., et al.,* C 10-0117 SI<br><br>*Target Corp. v. AU Optronics Corp., et al.,* C 10-4945 SI / | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO PURCHASES OF PANELS MADE BY SUPPOSED CONSPIRATORS NOT ALLEGED IN THE COMPLAINTS** |

On November 2, 2012, the Court held a hearing on defendants' motion for summary judgment as to purchases of panels made by supposed conspirators not alleged in the complaints. After the hearing, the Court directed the parties to file supplemental declarations; those declarations were filed on November 7 and November 12, 2012. For the reasons set forth in this order, defendants' motion is GRANTED IN PART AND DENIED IN PART. Docket Nos. 6178, 6350.

**BACKGROUND**

To calculate indirect purchaser damages, plaintiffs' experts Dr. Leslie Marx (testifying for the Target, Electrograph, and AT&T plaintiffs) and Dr. Alan Frankel (testifying for the Best Buy plaintiffs)

calculated the total combined market share of the supposed participants in the conspiracy, and multiplied that against each plaintiff's total indirect purchases to show the total indirect purchases of products containing panels made by the alleged conspirators ("the market share approach"). In calculating panel market share, both experts included purported co-conspirators that are not named in plaintiffs' complaints.[1]

As an alternative to the market share approach, Dr. Marx also calculated damages based on the "umbrella theory." The umbrella theory hypothesizes that a successful price-fixing conspiracy among certain firms creates a "price umbrella" that allows non-conspiring competitor firms to raise their prices without fear of losing market share. *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation*, 691 F.2d 1335, 1339 (9th Cir. 1982) ("The umbrella theory is essentially a consequential damages theory. It seeks to hold price-fixers liable for harm allegedly flowing from the illegal conduct even though the price-fixing defendants received none of the illegal gains and were uninvolved in their competitors' pricing decisions."). In making the "umbrella theory" damages calculations, Dr. Marx included all of plaintiffs' purchases of TFT-LCD products, including purchases from non-conspirators.

**LEGAL STANDARD**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to negate or disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. *See id.* at 325.

---

[1] Each of the complaints contains a specific section entitled "co-conspirators" or "agents and co-conspirators," but none of the entities at issue in this motion were identified as a "co-conspirator" in the complaints. *See* Docket No. 3508 ¶¶ 68-72 (AT&T Third Amended Compl.); Docket No. 3681 ¶¶ 72-75 (Electrograph First Amended Compl.); Docket No. 3511 ¶¶ 84-86 (Target Second Amended Compl.); Docket No. 2878 ¶¶ 51-72 (Best Buy First Amended Compl.).

The burden then shifts to the non-moving party to "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the evidence is viewed in the light most favorable to the non-moving party, and all justifiable inferences are to be drawn in its favor. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge [when she] is ruling on a motion for summary judgment." *Id.* Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir.1979); *see also Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (observing that there is no genuine issue of fact "where the only evidence presented is 'uncorroborated and self-serving' testimony" (quoting *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996))). The evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(c). Hearsay statements found in affidavits are inadmissible. *Fong v. Am. Airlines, Inc.*, 626 F.2d 759, 762-63 (9th Cir. 1980).

## DISCUSSION

### I. Unnamed co-conspirators

Defendants move for summary judgment as to plaintiffs' claims for damages based on purchases of panels manufactured by entities other than the defendants and alleged co-conspirators named in plaintiffs' complaints as "co-conspirators." Specifically, defendants seek summary judgment as to plaintiffs' claims based on purchases of panels manufactured by the following entities:

(i) <u>Target Corp., Sears, Roebuck and Co., Kmart Corp., Old Comp, Inc., Good Guys, Inc., RadioShack Corp., and Newegg, Inc</u>.: Acer Display, Advanced Displays, Inc., Alps Electric Co., Ltd., Hitachi, ID Tech, Innolux Display Corp., LG Innotek, Mitsui & Co. (Taiwan) Ltd., Mitsui & Co. (USA) Inc., NEC Corp., NEC Corp. of America, NEC Display Solutions of America, NEC Electronics America,

3

1  Optrex Corp., Quanta Display Corp., Toppoly Optoelectronics Corp., TPO Displays Corp., and Unipac
2  Electronics Corp.;

3  (ii) <u>Best Buy Co., Inc., Best Buy Purchasing LLC, Best Buy Stores, L.P., Best Buy China Ltd.,</u>
4  <u>and Magnolia Hi-Fi, Inc</u>.: Acer Display, Advanced Displays, Inc., Alps Electric Co., Ltd., BOE Corp.,
5  ID Tech, Innolux Display Corp., LG Innotek, NEC Corp., NEC Corp. of America, NEC Display
6  Solutions of America, Nikon, Optrex Corp., Philips Kobe, Quanta Display Corp., Samsung SDI, Samsung
7  Mobile Display, Sanyo Consumer Electronics Co., Ltd., SVA-NEC, Toppoly Optoelectronics Corp., TPO
8  Displays Corp., and Unipac Electronics Corp.;

9  (iii) <u>Electrograph Systems, Inc. and Electrograph Technologies Corp</u>.: Acer Display, Advanced
10 Displays, Inc., Alps Electric Co., Ltd., ID Tech, Innolux Display Corp., LG Innotek, NEC Corp., Optrex
11 Corp., Quanta Display Corp., Samsung Mobile Display, Samsung SDI, Ltd., Samsung SDI America, Inc.,
12 Seiko Instruments, Inc., SVA-NEC, Toppoly Optoelectronics Corp., TPO Displays Corp., and Unipac
13 Electronics Corp.;

14 (iv) <u>AT&T Mobility LLC, AT&T Corp., AT&T Services, Inc., Bellsouth Telecommunications,</u>
15 <u>Inc., Pacific Bell Telephone Company, AT&T Operations, Inc., AT&T Datacomm, Inc., and</u>
16 <u>Southwestern Bell Telephone Company</u>: Acer Display, Advanced Displays, Inc., Alps Electric Co., Ltd.,
17 Hitachi Ltd., Hitachi Displays, Ltd., Hitachi Electronic Devices (USA), Inc., ID Tech, Innolux Display
18 Corp., Koninklijke Philips Electronics N.V. (a/k/a Royal Philips Electronics N.V.), LG Innotek, Mitsui
19 & Co. (Taiwan) Ltd., Mitsui & Co. (U.S.A.), Inc., NEC Corporation, NEC Corporation of America, NEC
20 Display Solutions of America, Inc., NEC Electronics America, Inc., Optrex Corp., Philips Electronics
21 North America Corporation, Quanta Display Corp., Toppoly Optoelectronics Corp., TPO Displays Corp.,
22 and Unipac Electronics Corp.

23 Defendants contend that "federal law precludes plaintiffs from pursuing damages claims on
24 theories not presented in their complaint." Docket No. 6178 at 11:11-12. Defendants assert that plaintiffs
25 first identified the purported co-conspirators at issue in expert reports served after the close of fact
26 discovery, and that permitting the addition of new co-conspirators would be prejudicial because
27 defendants did not have the opportunity to conduct discovery on these damages claims.

28 Plaintiffs contend that they need not identify all co-conspirators in their complaints in order to

4

recover damages based on purchases from those co-conspirators.[2] The Court agrees with plaintiffs that the authority cited by defendants does not hold that an antitrust plaintiff must identify all alleged co-conspirators in the complaint. Instead, those cases simply hold that a plaintiff must provide the defendant with adequate notice of his or her claims, and that, under the facts of those cases, the plaintiffs had failed to do so. *See Pickern v. Pier 1 Imports (U.S.), Inc*., 457 F.3d 963, 969 (9th Cir. 2006) (holding the plaintiff failed to provide adequate notice to the defendants of challenged access barriers where the complaint alleged ADA violation based on the failure to provide a ramp, and additional barriers were identified for the first time in opposition to the defendant's motion for summary judgment and in an expert report served after the discovery deadline); *see also Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 908-09 (9th Cir. 2011) (applying *Pickern* and holding that district court did not err in refusing to consider access barriers identified for the first time in expert report served before the close of fact discovery because of prejudice to defendant).

The Court finds that relevant inquiry is not whether plaintiffs named all co-conspirators in their complaints, but whether plaintiffs have provided adequate notice of the claimed co-conspirators either in their complaints or through discovery such that defendants are not prejudiced. In *William Inglis & Sons Baking Co. v. ITT Continental Baking Co., Inc*., 668 F.2d 1014 (9th Cir. 1981), the Ninth Circuit held that although the plaintiff was not required to allege the identity of every co-conspirator to state a claim for relief, the plaintiff "was required at some point to make more concrete the nature of its 'vertical' conspiracy allegations." *Id*. at 1053. The question in *William Inglis* was whether the plaintiff was entitled to rely on a vertical conspiracy claim "the nature of which was not evident from the pleadings as originally filed," to oppose the defendant's motion for summary judgment. *Id*. at 1052. The Ninth Circuit held that the plaintiff had adequately placed the defendant on notice of its vertical conspiracy claim by naming the unnamed co-conspirators in answers to interrogatories one year before

---

[2] Plaintiffs also contend that Special Master Quinn has already denied a variation of defendants' motion. In June 2012, defendants moved to strike portions of plaintiffs' experts' rebuttal reports, including the portions of those reports that addressed new putative co-conspirators not addressed in the experts' opening reports. The special master denied defendants' motion, finding that the experts did not exceed the scope of proper rebuttal under Rule 26. Docket No. 5960 at 4:5-9. The special master did not address the question presented by the current motion, namely whether plaintiffs have identified a number of co-conspirators for the first time in their expert reports, and if so, whether doing so prejudices defendants.

5

trial, and that the defendant was not prejudiced because "the factual relationship between [the defendant and the vertical conspiracy co-conspirators] also had been explored in discovery in connection with Inglis' attempt to develop evidence of Continental's specific intent to monopolize the wholesale bread market. These explorations provide no reason to believe that Continental was unprepared to litigate the 'vertical' conspiracy claim." *Id*. at 1053-54.

Contrary to defendants' assertion that plaintiffs have attempted to add new, unalleged claims into their case via expert reports served after the close of discovery, many of the entities at issue were in fact disclosed to defendants prior to the close of discovery.[3] Based upon the Court's review of plaintiffs' discovery responses, the Court finds that plaintiffs identified the following entities as purported co-conspirators prior to the discovery cut-off:

(i) <u>Target Corp., Sears, Roebuck and Co., Kmart Corp., Old Comp, Inc., Good Guys, Inc., RadioShack Corp., and Newegg, Inc</u>.: Acer Display, Advanced Displays, Inc., Hitachi[4], ID Tech, Innolux Display Corp., LG Innotek, Mitsui & Co. (Taiwan) Ltd., NEC Electronics America, Optrex Corp., Quanta Display Corp., Toppoly Optoelectronics Corp., and Unipac Electronics Corp.;

(ii) <u>Best Buy Co., Inc., Best Buy Purchasing LLC, Best Buy Stores, L.P., Best Buy China Ltd., and Magnolia Hi-Fi, Inc</u>.: Acer Display, BOE Corp., ID Tech, Innolux Display Corp., LG Innotek, Optrex Corp., Quanta Display Corp., Samsung SDI, Sanyo Consumer Electronics Co., Ltd., SVA-NEC, Toppoly Optoelectronics Corp., and Unipac Electronics Corp.;[5]

(iii) <u>Electrograph Systems, Inc. and Electrograph Technologies Corp</u>.: Acer Display, Advanced

---

[3] Defendants assert that plaintiffs' discovery responses only disclose evidence of meetings between competitors, and that "attending a meeting is not the same as agreeing to conspire." Docket No. 6708 at 6:17-18. The Court finds that the various charts and responses, which were provided in response to interrogatories asking for evidence of conspiratorial meetings and participants, put defendants on notice that plaintiffs claimed that the entities listed were involved in the conspiracy. *See, e.g.*, Docket No. 7132-4 (AT&T and Motorola "Attachment A" listing "Conspiracy Meetings" and "Defendant(s)/Co-conspirator(s)."

[4] Defendants seek summary judgment on the Target plaintiffs' purchases from "Hitachi," without specifying which Hitachi entities are at issue. In discovery, the Target plaintiffs disclosed Hitachi Ltd., Hitachi Displays, Ltd., and Hitachi Electronic Devices (USA), Inc. as purported co-conspirators.

[5] The supplemental declaration of David Martinez states that Best Buy identified Advanced Displays, Inc. in its December 2, 2011 discovery responses, but the Court was not able to locate where Best Buy made this disclosure.

6

Displays, Inc., ID Tech, Innolux Display Corp., LG Innotek, Optrex Corp., Quanta Display Corp., Samsung SDI, Ltd., SVA-NEC, Toppoly Optoelectronics Corp., and Unipac Electronics Corp. In addition, on April 5, 2011, pursuant to this Court's order on its motion to amend, Electrograph filed a complaint against various NEC entities, including NEC Corporation. Thus, defendants have been on notice well before the discovery cut-off that Electrograph alleged that NEC Corporation was involved in the conspiracy;

(iv) <u>AT&T Mobility LLC, AT&T Corp., AT&T Services, Inc., Bellsouth Telecommunications, Inc., Pacific Bell Telephone Company, AT&T Operations, Inc., AT&T Datacomm, Inc., and Southwestern Bell Telephone Company</u>: Acer Display, Advanced Displays, Inc., ID Tech, Innolux Display Corp., Optrex Corp., Quanta Display Corp., Toppoly Optoelectronics Corp., and Unipac Electronics Corp.

In addition, defendants conducted discovery regarding several of the entities at issue prior to the discovery cut-off. In November 2011, defendants served plaintiffs with interrogatories and requests for admissions related to the participation in the conspiracy by various purported co-conspirators. For example, defendants served requests for admissions that the following co-conspirators did not participate in the conspiracy: (1) "Hitachi," defined by defendants to include Hitachi Ltd., Hitachi Displays, Ltd., Hitachi Electronic Devices (USA), Inc.; (2) "Koninklijke," defined by defendants to include Koninklijke Philips Electronics N.V. (a/k/a Royal Philips Electronics N.V.); (3) TPO Display Corp; and (4) "Philips," defined to include Philips Electronics North America Corporation. As such, the Court finds that defendants are not prejudiced by plaintiffs' claims that these entities were involved in the price-fixing conspiracy.

However, the Court concludes that for the remainder of the entities at issue, plaintiffs failed to adequately disclose their identities as purported co-conspirators prior to the discovery cut-off. The identification of these entities as co-conspirators for the first time in expert reports served after the close of discovery is prejudicial to defendants because defendants do not have the opportunity to conduct discovery on plaintiffs' claims that they are entitled to damages based on purchases from these entities. Plaintiffs contend that they identified these entities through corporate family allegations in the complaints, as well as through "various unnamed persons" allegations. All of the complaints contained

the following corporate family allegations:

> When [plaintiffs] refer to a corporate family or companies by a single name in their allegations of participation in the conspiracy, it is to be understood that they are alleging that one or more employees or agents of entities within the corporate family engaged in conspiratorial meetings on behalf of every company in that family [and] . . . [a]s a result, the entire corporate family was represented in meetings and discussions by their agents and were parties to the agreements reached in them. . . . Thus, all entities within corporate families were active, knowing participants in the alleged conspiracy.

*See* Docket No. 3508 ¶ 158 (AT&T Third Amended Compl.); Docket No. 3681 ¶ 140 (Electrograph First Amended Compl.); Docket No. 3511 ¶ 169 (Target Second Amended Compl.); Docket No. 2878 ¶ 146 (Best Buy First Amended Compl.). For example, the Target, Best Buy, and AT&T plaintiffs argue that although they did not name NEC Corporation, NEC Corporation of America, or NEC Display Solutions of America in their complaints, because they alleged that NEC LCD Technologies, Limited is a co-conspirator, those plaintiffs have adequately alleged participation in the conspiracy by the other NEC entities.[6]

The Court disagrees and finds that the corporate family allegations (or references to a general corporate name such as "Mitsui") do not adequately allege participation in the conspiracy by the various unnamed entities. As plaintiffs are aware, many of the defendants are members of extensive and complex corporate families that include, *inter alia*, domestic and foreign subsidiaries, joint ventures, and entities created as a result of mergers. For example, AT&T's Third Amended Complaint names as defendants six different Chi Mei entities and five different Samsung entities. *See* Docket No. 3508 ¶¶ 34-40, 51-57 (AT&T Third Amended Compl.). Each of the complaints states that the numerous named defendants within a corporate family are collectively referred to by a single corporate name, e.g., "Chi Mei." *See id*. ¶ 40 ("Defendants Chi Mei Corporation, Chimei Innolux Corporation, Chi Mei Optoelectronics USA, Inc., CMO Japan Co., Ltd., Nexgen, and Nexgen USA are referred to collectively herein as 'Chi Mei.'"). The complaints' defendant allegations, when read in conjunction with the allegations naming co-conspirators and the corporate family allegations, suggest that a reference to a *named* defendant or co-conspirator should be read to include all other *named* defendants or co-conspirators in that corporate family. Plaintiffs' corporate family allegations cannot be fairly interpreted as including unnamed

---

[6] Similarly, plaintiffs assert that disclosing "Mitsui" as a purported co-conspirator is sufficient to identify Mitsui and Co. (Taiwan) Ltd. and Mitsui and Co. (USA), Inc.

8

members of a corporate family.[7]

Accordingly, the Court GRANTS defendants' motion for partial summary judgment as to plaintiffs' claims for damages based on purchases from the following entities that the Court finds were not disclosed to defendants prior to the discovery cut-off (or otherwise the subject of discovery prior to the cut-off):

(i) <u>Target Corp., Sears, Roebuck and Co., Kmart Corp., Old Comp, Inc., Good Guys, Inc., RadioShack Corp., and Newegg, Inc</u>.: Alps Electric Co., Ltd., Mitsui & Co. (USA) Inc., NEC Corp., NEC Corp. of America, NEC Display Solutions of America, and NEC Electronics America;

(ii) <u>Best Buy Co., Inc., Best Buy Purchasing LLC, Best Buy Stores, L.P., Best Buy China Ltd., and Magnolia Hi-Fi, Inc</u>.: Advanced Displays, Inc., Alps Electric Co., Ltd.,NEC Corp., NEC Corp. of America, NEC Display Solutions of America, Nikon, Philips Kobe, and Samsung Mobile Display;

(iii) <u>Electrograph Systems, Inc. and Electrograph Technologies Corp</u>.: Alps Electric Co., Ltd., Samsung Mobile Display, and Seiko Instruments, Inc.;

(iv) <u>AT&T Mobility LLC, AT&T Corp., AT&T Services, Inc., Bellsouth Telecommunications, Inc., Pacific Bell Telephone Company, AT&T Operations, Inc., AT&T Datacomm, Inc., and Southwestern Bell Telephone Company</u>: Alps Electric Co., Ltd., LG Innotek, Mitsui & Co. (Taiwan) Ltd., Mitsui & Co. (U.S.A.), Inc., NEC Corporation, NEC Corporation of America, NEC Display Solutions of America, Inc., and NEC Electronics America, Inc.

## II. Umbrella theory

Defendants contend that Dr. Marx's alternative calculation of plaintiffs' indirect damages under state law[8] is contrary to the Ninth Circuit's bar against umbrella liability. Plaintiffs do not dispute that

---

[7] The Court also finds that the "various unnamed persons" allegations – "Various persons and/or firms not named as Defendants in this Complaint are believed to have participated as co-conspirators in the violations alleged herein and to have performed acts and made statements in furtherance thereof, all of the names and acts are within the exclusive knowledge of the Defendants" Docket No. 2878 ¶ 53 (Best Buy First Amended Compl.) – are insufficient, absent a subsequent disclosure by plaintiffs of the identities of the alleged co-conspirators.

[8] Plaintiffs assert state law indirect purchaser claims under the laws of California, Illinois, Michigan, Minnesota, and New York.

9

the Ninth Circuit has held, in the context of federal antitrust claims, that umbrella claims are "unacceptably speculative and complex." *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation*, 691 F.2d at 1341.

> Under an umbrella theory, the result of any attempt to ascertain with reasonable probability whether the non-conspirators' prices resulted from the defendants' purported price-fixing conspiracy or from numerous other pricing considerations would be speculative to some degree. When the fact of a multi-tiered distribution system is imposed upon the above complex set of variables, the obstacles to intelligent inquiry become nearly insurmountable. The causal effect of each pricing decision would have to be pursued through the chain of distribution. Not only would we be required to speculate that plaintiffs were injured solely as the result of umbrella pricing, but also we would be required to sanction complex judicial inquiry into the pricing decisions of sellers remote from plaintiffs.

*Id*. (footnotes omitted). Although some federal courts have allowed antitrust claims to proceed under the umbrella theory, most federal courts in recent years have rejected these claims. *See In re Vitamins Antitrust Litig.*, Nos. MISC. NO. 99–197 (TF, MDL NO. 1285, 99CIV5134), 2001 WL 855463, at *4 (D.D.C. July 2, 2001) ("The overwhelming majority of recent court decisions that have addressed the viability of the 'umbrella' theory after *Associated General* have rejected 'umbrella' claims."); *Garabet, M.D., Inc. v. Autonomous Technologies Corp*., 116 F. Supp. 2d 1159, 1168-69 (C.D. Cal. 2000) ("[T]he weight of recent authority using the nuanced antitrust analysis outlined in *Associated General Contractors*, has found against allowing 'umbrella' standing to plaintiffs"); *F.T.C. v. Mylan Laboratories, Inc*., 62 F. Supp. 2d 25, 38-40 (D.D.C.1999) (considering both pre- and post-*Associated General* precedents and ruling against "umbrella" theory liability); *Gross v. New Balance Athletic Shoe, Inc*., 955 F. Supp. 242, 246-47 (S.D.N.Y.1997) (rejecting "umbrella" theory based on *Associated General*); *see also Mid–West Paper Products Co. v. Continental Group, Inc*., 596 F.2d 573 (3d Cir.1979) (rejecting umbrella theory); *In re Folding Carton Antitrust Litig*., 88 F.R.D. 211 (N.D. Ill.1980) (same); *Liang v. Hunt*, 477 F. Supp. 891 (N.D. Ill.1979) (same); *but see In re Arizona Dairy Products Litig.*, 627 F. Supp. 233 (D. Ariz.1985) (post-*Associated General* case accepting "umbrella" theory, but relying on pre-*Associated General* precedent).

Defendants argue that because the five states at issue have not addressed whether umbrella damages are available, the Court should follow Ninth Circuit precedent, particularly with regard to states

10

(Michigan, Illinois, and New York)[9] that have harmonized their antitrust statutes with federal law. *See Mylan Laboratories, Inc.*, 62 F. Supp. at 42 (dismissing state law umbrella theory damages claims where there was no "independent state law approach to the 'umbrella standing' theory" and relevant "state statutes refer to federal antitrust law for guidance"). Defendants contend that if plaintiffs are permitted to pursue umbrella damages for all state law claims, the Court (and jury) will be forced to engage in the sort of complex and conjectural analysis that the Ninth Circuit sought to avoid in *Petroleum Products*.

Plaintiffs appear to concede that there is no state law authority from any of the five states at issue holding that umbrella damages claims are permissible. Instead, plaintiffs argue that for Minnesota and California, which do not have harmonization provisions, "there is absolutely no basis on which to grant defendants' motion." Docket No. 6489 at 20:10. For the three states that do have harmonization provisions, plaintiffs assert that even if a state seeks to harmonize its state antitrust law with federal law in most respects, there is no reason to assume that this rule applies with regard to the availability of umbrella damages. Plaintiffs argue that the federal courts that have precluded the use of umbrella damages have reasoned that such damages are inconsistent with the Supreme Court's decision to bar indirect purchaser claims in *Illinois Brick*. *See e.g., Petroleum Prods.*, 691 F.2d at 1340 ("the limitations recognized in *Illinois Brick* bar umbrella claims in the context of the multi-tiered distribution chain alleged here"). Plaintiffs argue that given that the five states have expressly determined not to follow *Illinois Brick*, there is no reason to categorically bar umbrella damages claims under state law.

In the absence of any state law authority endorsing umbrella damages claims, and based on the particular facts of these cases involving a multi-layered distribution chain, the Court finds it appropriate to follow *Petroleum Products* for the reasons articulated by defendants and to preclude plaintiffs from

---

[9] *See* Mich. Comp. Laws § 445.784(2) ("It is the intent of the legislature that in construing all sections of this act, the courts shall give due deference to interpretations given by the federal courts to comparable antitrust statutes, including, without limitation, the doctrine of per se violations and the rule of reason."); *International Broth. of Teamsters, Local 734 Health and Welfare International Broth. of Teamsters, Local 734 Health and Welfare Trust Fund v. Philip Morris Inc*., 196 F.3d 818, 828 (7th Cir. 1999) ("Illinois does not follow the *Illinois Brick* doctrine. . . . But in other respects Illinois antitrust law uses the federal approach."); *Anheuser-Busch, Inc. v. Abrams*, 71 N.Y.2d 327, 335 (Ct. Appeals 1988) ("Although we do not move in lockstep with the Federal courts in our interpretation of antitrust law . . . the Donnelly Act—often called a 'Little Sherman Act'—should generally be construed in light of Federal precedent and given a different interpretation only where State policy, differences in the statutory language or the legislative history justify such a result.").

11

pursuing their alternative umbrella damages theories. Although the Ninth Circuit's decision in *Petroleum Products* rested on *Illinois Brick*, the reasoning underlying its decision – that umbrella claims are "unacceptably speculative and complex"– applies here. As other courts have noted, "[t]he main difficulty with the umbrella theory is that, even in the context of a single level of distribution, ascertaining the appropriate measure of damages is a highly speculative endeavor. There are numerous pricing variables which this Court would be bound to consider to approximate the correct measure of damages, including the cost of production, marketing strategy, elasticity of demand, and the price of comparable items . . . ." *Mylan Laboratories, Inc*., 62 F. Supp. at 39; *see also Gross*, 955 F. Supp. at 246 (dismissing umbrella liability claims as "the causal connection between the alleged injury and the conspiracy is attenuated by significant causative factors (i.e. independent pricing decisions of non-conspiring retailers)").

**CONCLUSION**

Accordingly, for the reasons stated above, summary judgment is GRANTED IN PART as to plaintiffs' claims for damages allegedly incurred through purchases of panels manufactured by companies not named as conspirators in the complaints. Specifically, plaintiffs may not recover damages based on purchases of panels manufactured by the following companies not named as conspirators in their respective complaints:

(i) <u>Target Corp., Sears, Roebuck and Co., Kmart Corp., Old Comp, Inc., Good Guys, Inc., RadioShack Corp., and Newegg, Inc</u>.: Alps Electric Co., Ltd., Mitsui & Co. (USA) Inc., NEC Corp., NEC Corp. of America, NEC Display Solutions of America, and NEC Electronics America;

(ii) <u>Best Buy Co., Inc., Best Buy Purchasing LLC, Best Buy Stores, L.P., Best Buy China Ltd., and Magnolia Hi-Fi, Inc</u>.: Advanced Displays, Inc., Alps Electric Co., Ltd.,NEC Corp., NEC Corp. of America, NEC Display Solutions of America, Nikon, Philips Kobe, and Samsung Mobile Display;

(iii) <u>Electrograph Systems, Inc. and Electrograph Technologies Corp</u>.: Alps Electric Co., Ltd., Samsung Mobile Display, and Seiko Instruments, Inc.;

(iv) <u>AT&T Mobility LLC, AT&T Corp., AT&T Services, Inc., Bellsouth Telecommunications, Inc., Pacific Bell Telephone Company, AT&T Operations, Inc., AT&T Datacomm, Inc., and Southwestern Bell Telephone Company</u>: Alps Electric Co., Ltd., LG Innotek, Mitsui & Co. (Taiwan)

Ltd., Mitsui & Co. (U.S.A.), Inc., NEC Corporation, NEC Corporation of America, NEC Display Solutions of America, Inc., and NEC Electronics America, Inc.

In addition, the Court GRANTS summary judgment in favor of defendants on plaintiffs' "umbrella theory" claims for damages under state law.

**IT IS SO ORDERED.**

Dated: December 26, 2012

SUSAN ILLSTON
United States District Judge