IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION / | No. M 07-1827 SI<br>MDL. No. 1827 |
| This Order Relates to:<br><br>*AT&T Mobility LLC v. AU Optronics Corp., et al.,* C 09-4997 SI<br><br>*Best Buy Co., Inc. v. AU Optronics Corp., et al.,* C 10-4572 SI<br><br>*Electrograph Systems, Inc. v. Epson Imaging Devices Corp., et al.,* C 10-0117 SI<br><br>*Target Corp. v. AU Optronics Corp., et al.,* C 10-4945 SI / | **ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON DOWNSTREAM PASS-ON** |

On November 16, 2012, the Court held a hearing on defendants' motion for summary judgment on downstream pass-on. For the reasons set forth in this order, defendants' motion is GRANTED IN PART and DENIED IN PART. Docket Nos. 6178 and 6338. The Court DENIES defendants' request for certification to the Michigan and Minnesota Supreme Courts. Docket No. 7069.

**DISCUSSION**

Plaintiffs purchased finished products containing TFT-LCD panels ("LCD products") and resold those products to subsequent purchasers. Plaintiff Electrograph was at all times relevant to this action a distributor that purchased LCD products for resale to resellers and system integrators. Plaintiffs Good

Guys, Sears, Target, Best Buy, and Kmart were at all times relevant to this action retailers that purchased LCD products for resale to consumers. Plaintiff AT&T Mobility was at all times relevant to this action a wireless carrier that purchased mobile phones for resale to retail customers and to resellers of mobile phones. Plaintiffs assert state law indirect purchaser claims under the laws of California, Illinois, Michigan, Minnesota, and New York.[1]

Defendants move for summary judgment, seeking an order holding that "it is established in [the *AT&T*, *Target*, *Best Buy*, and *Electrograph*] cases that the amount of actual damages (before any trebling) that each Plaintiff may seek to recover with respect to its indirect purchases of TFT-LCD panels shall be limited to the amount of any overcharge that was absorbed and not passed-on downstream to its customers, and thus shall be capped by multiplying any overcharge it may prove it incurred by 1 minus its undisputed downstream pass-on rates (*i.e.*, 'the resulting percentage caps')." Docket No. 6338 at 1:8-13. Defendants contend that as a matter of statute, controlling case law, and/or established legal reasoning in each of the jurisdictions at issue, indirect purchaser claims are limited to the harm that plaintiff actually suffered, and that plaintiffs cannot recover the amount of any overcharge that they passed-on to their customers. Defendants further assert that they have submitted undisputed evidence of each plaintiff's downstream pass-on rates.

Plaintiffs contend that none of the state laws at issue permits defendants to assert a pass-on defense under the circumstances of these cases. Plaintiffs also argue that defendants have failed to meet their burden of identifying indisputable evidence that they will pay duplicative damages if a pass-on defense is denied. Finally, plaintiffs assert that there are disputed issues of material fact as to both the existence and extent of any downstream pass-on.

## I. California (Newegg and Electrograph)

In *Clayworth v. Pfizer, Inc*., the California Supreme Court held that "[w]hile a pass-on defense

---

[1] Electrograph brings claims under the California Cartwright Act; Sears and AT&T bring claims under the Illinois Antitrust Act; Target and Best Buy bring claims under the Minnesota antitrust statute; Kmart brings claims under the Michigan Antitrust Reform Act (MARA); and Electrograph and AT&T bring claims under the New York Donnelly Act. At the hearing, plaintiffs' counsel stated that Good Guys is not pursuing any indirect purchaser claims.

is generally precluded, a few instances remain in which it will still be available."

> First, *Hanover Shoe* [*v. United Shoe Machinery Corp.*, 392 U.S. 481 (U.S. 1968)] recognized an exception for "cost-plus" contracts (*Hanover Shoe*, *supra*, 392 U.S. at p. 494, 88 S.Ct. 2224) and, given the Legislature's endorsement of *Hanover Shoe*, that exception would apply to the Cartwright Act as well. Second, in light of the *Illinois Brick* repealer statute (§ 16750, subd. (a)), cases may arise where application of the *Hanover Shoe* rule raises the prospect of duplicative recovery. In instances where multiple levels of purchasers have sued, or where a risk remains they may sue, trial courts and parties have at their disposal and may employ joinder, interpleader, consolidation, and like procedural devices to bring all claimants before the court. In such cases, if damages must be allocated among the various levels of injured purchasers, the bar on consideration of pass-on evidence must necessarily be lifted; defendants may assert a pass-on defense as needed to avoid duplication in the recovery of damages.

49 Cal.4th 758, 787 (2010). Defendants contend that these cases fit within the exception recognized by the California Supreme Court, and that defendants should be permitted to assert a pass-on defense in order to avoid duplication of the recovery of damages. Defendants argue that multiple levels of purchasers have sued defendants and a risk remains that more duplicative claims will be brought. Defendants argue that because each plaintiff purchased LCD products and resold them to its customers, the threat of claims by plaintiffs' upstream vendors (including plaintiffs Motorola, Nokia, Kodak and Dell) and downstream customers (including members of the IPP class and citizens represented by State Attorneys General in *parens patriae* actions) for all or part of the same alleged overcharge necessarily creates a risk of duplicative recovery. Defendants also note that many of plaintiffs' customers have already recovered the overcharges plaintiffs seek through the IPP and *parens patriae* settlements.[2]

Plaintiffs contend that the *Clayworth* exception is inapplicable here because "it is clear from the language Defendants purport to rely on that pass-on is potentially relevant under the Cartwright Act only where there is an actual 'need[] to avoid duplication in the recovery of damages' among multiple layers of indirect purchasers." Docket No. 6628 at 11:18-20 (quoting *Clayworth*, 49 Cal.4th at 787). Plaintiffs argue that defendants misread the *Clayworth* exception as applying to multiple layers of claims, rather than multiple layers of actual recovery of damages where that recovery is duplicative. Plaintiffs argue

---

[2] The IPP class settlement settles the claims of members of 25 state classes (Arizona, Arkansas, California, the District of Columbia, Florida, Hawaii, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nevada, New Mexico, New York, North Carolina, North Dakota, Rhode Island, South Dakota, Tennessee, Vermont, West Virginia, and Wisconsin), as well as the *parens patriae* claims brought by the states of Arkansas, California, Florida, Michigan, Missouri, and New York.

that defendants have not shown that they have disgorged the full amount of their ill-gotten gains, and that to the contrary, plaintiffs in the IPP cases have advised the Court that the aggregate amount of their settlements represents no more than approximately 50% of "actual" damages. Plaintiffs also argue that the IPP and *parens patriae* settlements "cannot count towards 'duplicative recovery' because they are not damage awards rendered by a jury, and Defendants cannot bind Plaintiffs to settlements that Plaintiffs had no role in shaping, determining, or approving." *Id*. at 12:9-11.

The Court concludes that defendants have demonstrated that it is appropriate under the circumstances of this MDL to permit defendants to assert a pass-on defense as to the California claims. In *Clayworth*, the California Supreme Court stated that "in instances where multiple levels of purchasers have sued, *or where a risk remains they may sue* . . . [and] if damages must be allocated among the various levels of injured purchasers, the bar on consideration of pass-on evidence must necessarily be lifted." *Clayworth*, 49 Cal.4th at 787 (emphasis added). The *Clayworth* court did not limit the availability of a pass-on defense to cases involving duplicative recoveries or judgments, and instead held that the pass-on defense could be permitted where there was "the prospect of duplicative recovery." Here, there is a very real prospect of duplicative recovery because defendants have been sued by multiple levels of purchasers alleging overlapping and/or identical claims.[3] Further, the Court disagrees with plaintiffs' assertion that settlements cannot be considered when evaluating whether there is the possibility of duplicative recovery. A settlement is a recovery that resolves a claim, and the question is not whether a settlement by another set of plaintiffs (for example, the IPPs) is binding on the current plaintiffs, but rather whether multiple plaintiffs are seeking to recover for the same alleged overcharge.[4]

---

[3] For example, Dell has sued defendants alleging direct purchaser claims over its purchases of LCD panels that Dell incorporated into notebook computers; Best Buy alleges indirect purchaser claims against defendants regarding its purchases of notebook computers from Dell; and the IPP and *parens patriae* cases alleged indirect purchaser claims on behalf of consumers who purchased Dell notebook computers from retailers such as Best Buy.

[4] Plaintiffs argue that if defendants are permitted to assert a pass-on defense, *Clayworth* "necessitates the consideration of consequential damages." Docket No. 6628 at 13:14. *See Clayworth*, 49 Cal.4th at 785-86 ("A purchaser might lose profits or sales, and perhaps market share as well, vis-à-vis another purchaser/distributor not subject to the same overcharge. . . . [O]ne cannot rationally admit evidence of a pass-on, under a theory of mitigation, while also excluding evidence that the pass-on in fact failed to mitigate fully the loss occasioned by the original overcharge."). In their reply, defendants assert that plaintiffs have never sought consequential damages.

4

## II. New York (Electrograph and AT&T)

The New York Donnelly Act expressly requires courts to consider evidence of downstream pass-on of alleged overcharges and to limit damage awards accordingly: "in actions where both direct and indirect purchasers are involved, a defendant shall be entitled to prove it is a partial or complete defense to a claim for damages that the illegal overcharge has been passed onto others who were themselves entitled to recovery so as to avoid duplication of recovery of damages." N.Y. Gen. Bus. Law § 340(6).

Electrograph and AT&T argue that "the only transactions in which multiple indirect purchasers were involved are sales between remaining Plaintiffs in this MDL [and that] Defendants may be permitted to assert a pass-on defense with respect to those transactions at trial." Docket No. 6628 at 17:11-13. Plaintiffs assert that a broader pass-on defense is not available because neither plaintiff, nor the DPP class, nor the IPP class pursued direct purchaser claims under New York law. *Id*. at 17:7-8. Plaintiffs also assert that because the IPP New York state damages subclass and the New York Attorney General settled their Donnelly Act claims, those settlements should not be considered when evaluating whether defendants are subject to duplicative recovery.

The Court finds that the required elements for the pass-on defense are present here. As an initial matter, plaintiffs are incorrect in their characterization of the claims alleged in this MDL because the New York Attorney General's complaint alleged direct and indirect claims under the Donnelly Act. Docket No. 4763 ¶ 118. That complaint also asserted claims on behalf of purchasers of numerous LCD products, including televisions, handheld devices, computer monitors, and notebook computers – the same LCD products at issue in the *Electrograph* and *AT&T* cases. Docket No. 4763 ¶¶ 118, 135-143. Finally, nothing in the Donnelly Act limits the assertion of a pass-on defense to cases in which there have not been settlements by some plaintiffs. Instead, the statute provides that a defendant is entitled to assert as a defense that an "illegal overcharge has been passed onto others who were themselves entitled to recovery so as to avoid duplication of recovery of damages." N.Y. Gen. Bus. Law § 340(6).

## III. Michigan (Kmart)

In *In re Vitamins Antitrust Litigation*, the court allowed the defendants to present evidence of downstream pass-on under Michigan law because "while the Court acknowledges that the MARA does

5

not explicitly provide for a pass through defense against indirect purchaser claims, the Court is persuaded that Michigan law only permits the recovery of 'actual damages' for antitrust claims. As such, in order to give proper effect to the term 'actual damages' under the MARA, the Court finds that defendants can challenge plaintiff's damage estimates with a pass through defense." 259 F. Supp. 2d 1, 8-9 (D.D.C. 2003). Chief Judge Hogan found that Michigan "[has] always limited a plaintiff's recovery to the amount the plaintiff was actually injured, even where the assessment of that amount may be complex or difficult." *Id*. at 7. In addition, Judge Hogan reasoned that "Michigan courts have tried to prevent potential double recovery awards" in other cases, and thus that allowing evidence of past-on would be appropriate under the Michigan antitrust statute.

The Court agrees with Judge Hogan's reasoning, and holds that defendants may present evidence of downstream pass-on. Further, although plaintiffs assert that there is no chance of duplicative recovery here, the Court disagrees because the IPP and *parens patriae* settlements included the claims brought on behalf of Michigan consumers.

## IV. Illinois (Sears and AT&T)

Plaintiffs Sears and AT&T bring claims under the Illinois Antitrust Act. Defendants contend that a pass-on defense is consistent with Illinois law regarding damages in non-antitrust cases, and with the Illinois Antitrust Act in particular. Defendants cite *Physicians Mut. Ins. Co. v. Asset Allocation and Management Co.*, for the proposition that "compensatory damages are designed to place [a person] in a position substantially equivalent in a pecuniary way to that which he would have occupied had no tort been committed." 2007 WL 2875237, at *7 (N.D. Ill. Sept. 28, 2007) (in a case involving alleged investment losses, granting summary judgment in favor of the defendants because the plaintiffs "recovered the entire purchase price of their original investment plus interest."). Defendants also rely on the following provision from the Illinois Antitrust Act:

> No provision of this Act shall deny any person who is an indirect purchaser the right to sue for damages. Provided, however, that in any case in which claims are asserted against a defendant by both direct and indirect purchasers, the court shall take all steps necessary to avoid duplicate liability for the same injury including transfer and consolidation of all actions.

740 I.L.C.S. 10/7(2).

6

Plaintiffs respond that neither the Illinois legislature nor the courts have ever indicated that a pass-on defense exists in Illinois. Plaintiffs argue that the provision from the Illinois Antitrust Act only addresses administrative allocation issues, and that it says nothing about an affirmative pass-on defense being available in Illinois. Plaintiffs contend that defendants are conflating an affirmative pass-on defense with the potential for an equitable allocation of damages at trial. Plaintiff further argues that these allocation considerations are irrelevant to certain claims, such as AT&T's potential recovery of damages from defendants based on purchases of mobile handsets as the IPP consumer class did not include indirect purchasers of mobile handsets.

The Court concludes that in the absence of any authority precluding the pass-on defense under Illinois law, it is appropriate under the circumstances of this MDL to permit defendants to assert a pass-on defense. The Illinois Antitrust Act expressly states that "the court shall take all steps necessary to avoid duplicate liability for the same injury." Consideration of whether plaintiffs have passed-on any alleged overcharges will enable the Court to avoid duplicative liability and prevent plaintiffs from recovering for damages that they did not actually suffer.

## V. Minnesota (Target and Best Buy)

Defendants argue that Minnesota "defines actual damages as [a]n amount awarded to a complainant to compensate for a proven injury or loss; damages that repay actual losses." *Ray v. Miller Meester Advertising, Inc.*, 684 N.W.2d 404, 407 (Minn. 2004) (addressing damages under the Minnesota Human Rights Act). Defendants argue that an injury that is "passed on" to another purchaser is not part of the plaintiff's "actual loss."

Defendants also cite the following provision of Minnesota's antitrust statute:

> Any person, any governmental body, or the state of Minnesota or any of its subdivisions or agencies, injured directly or indirectly by a violation of sections 325D.49 to 325D.66, shall recover three times the actual damages sustained, together with costs and disbursements, including reasonable attorneys' fees. In any subsequent action arising from the same conduct, the court may take any steps necessary to avoid duplicative recovery against a defendant.

Minn. Stat. § 325D.57. Defendants argue that precluding recovery of overcharges passed-on to other purchasers would avoid or reduce the risk of duplicative recoveries. Defendants rely on the Minnesota

Supreme Court's decision in *Lorix v. Crompton Corp.*, 736 N.W.2d 619 (Minn. 2007). In *Lorix*, the Minnesota Supreme Court held that the factors articulated in *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519 (1983) ("*AGC*"), "do not provide the benchmark for antitrust standing in Minnesota." *Id.* at 627. Defendants cite the following portion of *Lorix*:

> With regard to the risk of duplicative recoveries under *AGC* factor (5), section 325D.57 allows a court to "take any steps necessary to avoid duplicative recovery against a defendant" in a subsequent action arising from the same conduct. To the extent that our courts cannot ameliorate the risk of duplicative recovery, as where parallel proceedings in federal courts or courts in other states may result in later awards based on the same injuries, this risk is inherent in the dual system of private antitrust enforcement created by *Illinois Brick* and *California v. ARC America Corp.*, 490 U.S. 93, 101, 109 S.Ct. 1661, 104 L.Ed.2d 86 (1989) (holding that federal antitrust law's bar to indirect purchaser suits does not preempt state courts from entertaining such suits).See Report of the Indirect Purchaser Task Force, 63 Antitrust L.J. 993, 994 (Spring 1995) (concluding that the current system of antitrust enforcement creates the risk that the full amount of an anticompetitive overcharge, trebled, will be recovered by direct purchasers under federal law and indirect purchasers at every successive stage of distribution under state law).While this risk is a legitimate and important consideration, it is not a risk that our court may remedy by restricting Minnesota antitrust law in ways that our legislature has not.

*Id.* at 628.

Defendants also cite *Lorix*'s statement that while "Minnesota antitrust law is generally interpreted consistently with federal antitrust law[,]" *id.* at 626, for purposes of giving claims to indirect purchasers, "the 1984 amendment to Minn. Stat. § 325D.57 was intended to restore Minnesota antitrust law to its pre-*Illinois Brick* contours." *Id.* at 634. Defendants assert,

> *Lorix* went on to cite *In re Western Liquid Asphalt Cases*, 487 F.2d 191 (9th Cir. 1973) as an example of the pre-*Illinois Brick* law it would follow. *Lorix*, 736 N.W.2d at 634. *In re Western Liquid Asphalt*, in turn, holds that "in passing-on cases, the intermediary should recover the amount of the overcharge that was not passed on, if the proof shows that the ultimate consumer did not pay it at all, and any lost profits resulting from increased costs." 487 F.2d at 201. Thus, to the degree Minnesota meant to restore and adopt cases like *In re Western Liquid Asphalt* as its own, it also meant to adopt the rule that a plaintiff could only recover as damages an overcharge that was not passed-on.

Docket No. 6338 at 18:1-11.

Plaintiffs respond that the Minnesota Antitrust Act does not permit a pass-on defense, and that the statute only provides courts with discretion to consider duplicative recovery. Plaintiffs argue that the *Lorix* court implicitly rejected any pass-on defense when it stated that duplicative recovery of damages can be proper under the Minnesota Antitrust Act. *See Lorix*, 736 N.W.2d at 628 ("To the extent that our

**United States District Court**
For the Northern District of California

courts cannot ameliorate the risk of duplicative recovery, as where parallel proceedings in federal courts or courts in other states may result in later awards based on the same injuries, this risk is inherent in the dual system of private antitrust enforcement created by *Illinois Brick* and *California v. ARC America Corp*.").

Plaintiffs also contend that the Minnesota Supreme Court rejected a pass-on defense in *State by Humphrey v. Philip Morris Inc*., 551 N.W.2d 490 (Minn. 1996). In *Philip Morris*, Blue Cross and the state of Minnesota sued tobacco companies alleging "that the tobacco companies illegally conspired to suppress research on the deleterious effects of smoking and to manipulate nicotine levels in cigarettes in order to induce nicotine addiction in smokers. . . . [and ] that the tobacco industry undertook a duty to protect the public health by its assertions that it would cooperate with public health authorities and that it accepted the preservation of public health as a basic industry responsibility." *Id*. at 492. Blue Cross sought "damages resulting from the fact that it has paid and will pay substantially higher amounts to its contracted health care providers due to the increased cost of health care services for treatment of smoking-related illnesses in its nicotine-addicted consumer/patients." *Id*.

The *Philip Morris* court held that the Minnesota Antitrust Act's "expansive grant of standing reaches the injuries suffered by Blue Cross," *id*. at 496, and rejected the tobacco companies' pass-through defense.

> After *Illinois Brick* was decided, however, Minnesota acted to change its law to allow anyone to sue in antitrust. *See* Act of April 24, 1984, ch. 458, § 1, 1984 Minn.Laws 228. Although we have not before considered the relationship of this statutory change to *Illinois Brick*, the court of appeals has held that the legislative history of this enactment, codified at Minn.Stat. § 325D.57, indicated that it was a direct response to the *Illinois Brick* decision. *Keating v. Philip Morris, Inc*., 417 N.W.2d 132, 136 (Minn. App.1987). We concur with this analysis and conclude that it was the intent of the Minnesota legislature to abolish the availability of the pass through defense by specific grants of standing within statutes designed to protect Minnesota citizens from sharp commercial practices. As the pass through defense is unavailable to the tobacco companies, Blue Cross has standing to sue under the various consumer protection theories, including antitrust, alleged in its complaint.

*Id*. at 497 (footnote omitted).

Defendants argue that *Philip Morris* is a standing case, not a damages case. The Court agrees. *Philip Morris* did not address the question of "pass-on" in determining damages, and the court expressly noted that "the only issue before this court is a question of whether Blue Cross has standing to bring a

9

cause of action under any of the four theories upon which it relies." *Id*. at 493. Indeed, in *Philip Morris* Blue Cross was seeking to recover for the increased cost of patient care related to smoking, not an illegal overcharge, and thus the question of pass-on and damages was not at issue. *Lorix* notes that damages and standing are different and that finding a plaintiff has standing "does not mean that [it] will recover [.]" *Lorix*, 736 N.W.2d at 635.

The Court concludes that allowing a pass-on defense is consistent with the Minnesota Antitrust Act because plaintiffs will recover their "actual damages sustained." Minn. Stat. § 325D.57. The statute expressly permits the court to "take any steps necessary to avoid duplicative recovery against a defendant." Here, where multiple levels of purchasers have sued defendants alleging identical and/or overlapping claims, consideration of pass-on is necessary to avoid duplicative recovery.

## VI. Damages and downstream pass-on rates

The Court finds that there are disputed issues of fact regarding the existence and extent of plaintiffs' downstream pass-on rates. Accordingly, the Court DENIES the balance of defendants' motion for summary judgment.

### CONCLUSION

Accordingly, for the reasons stated above, the Court GRANTS IN PART defendants' motion for summary judgment and holds that defendants may assert a pass-on defense to plaintiffs' state law indirect purchaser claims.

**IT IS SO ORDERED.**

Dated: December 26, 2012

SUSAN ILLSTON
United States District Judge